### WARREN FEATHERBONE CO. v. DODGE.

(Circuit Court, D. Massachusetts. August 7, 1902.)

No. 1,558.

1. PATENTS—INFRINGEMENT—METHOD OF ATTACHING STIFFENINGS TO DRESS WAISTS.

    The Warren patent, No. 327,626, for a method of attaching stiffenings to dress waists, construed, and *held* not infringed.

In Equity. Suit for infringement of letters patent No. 327,626, for a method of attaching stiffening to dress waists, issued to Edward K. Warren October 6, 1885. On final hearing.

Fred L. Chappell, Seabury C. Mastick, and Frederick L. Emery, for complainant.

J. Steuart Rusk, for defendant.

BROWN, District Judge. This suit is for infringement of letters patent No. 327,626, granted to Edward K. Warren October 6, 1885, for improvements in methods of attaching stiffenings to dress waists. The defenses are invalidity and noninfringement. The patent has a single claim:

"The method of attaching the stiffening material to seams by placing it in the open seam after the main seam is sewed, and attaching it to the fabric by stitching its sides to the inside portion of the open seam without connecting it with the main seam, substantially as described."

It appears that Warren was the originator of an article known as "Featherbone," which is used in dressmaking as a substitute for whalebone. The complainant's presentation of its case calls for the remark that this patent is not for "Featherbone," and cannot be supported by evidence as to the characteristics, utility and commercial success of "Featherbone." It also appears that the complainant uses, or teaches others to use, in connection with "Featherbone," what is termed the "Warren mode of springing," which is described as follows:

"The operator takes hold of the material already stitched and the material of the garment at the seam which is about to be stitched to the stay, and sharply turns the former portion vertically, and creates a drag or tension upon the latter portion by grasping the same between the fingers. The direct result of this operation is that the material of the garment at the seam, including the flap portions thereof, is stretched relatively to the stay or bone. * * * The direct effect of this is to constantly keep the body of the material under tension, and remove all wrinkles, and produce absolute smoothness along the length of the seam."

The portions of the record relating to springing are entirely irrelevant to the patent, and may be eliminated from the case: First, because the Warren mode of springing is a special mode of manipulating the stay and material, not disclosed by the patent; and, secondly, because it has not been shown that this method of manipulation is practical or possible when the stay is attached to the material in the manner shown in the patent. So far as it has relevancy, the evidence tends to show a substantial difference between the defendant's method and that described in the patent. The first question is whether the defendant uses the method claimed in the patent; and the conclusion upon this point renders it unnecessary to consider the authorities cited upon the question whether what is shown is patentable as a method. The method consists of two steps: First, placing the stiffening material in the open seam, i. e., within the flaps which project beyond the main seam. The location of stiffening material within the flaps of the main seam is proven to be old in the art, and not new with Warren. The second step is attaching it to the fabric by "stitching its sides to the inside portion of the open seam without connecting it with the main seam." The drawings and specification show the stiffening material attached to both flaps of the open seam. The drawings show a zigzag line of stitching, passing across the central line of the stay or stiffening material, "alternating on each side of the main or outer seam, so that the stiffening material is firmly connected to the inward projecting parts of the same without in any manner affecting the principal seam of the fabric, and yet supporting the fabric as firmly as though it were directly connected therewith." In this way, the "sides" of the stiffening material, i. e., those parts on either side of its central line and on either side of the main seam, are attached to the inside portion of the main seam. The specification states: "It is not essential that the stitching should be zigzag, as it may be in two straight lines, without crossing the

middle strand of the stiffening material." It seems clear that this specification instructs the reader to attach the stiffening material, at opposite sides of the main seam, to both flaps of the inner seam, by stitches through the stiffening material upon each side of its central line. It is very clear that the defendant does not do what the patent describes. His stiffening material is attached by a single line of stitching passing along the central line of the stay. The sides of the stay are left unattached and unconfined. The words of the claim, "by stitching its sides to the inside portion of the open seam," are not applicable to the defendant's method of attachment. Furthermore, the defendant attaches his stay to only one flap of the inner seam. His stay, therefore, is not "firmly connected to the inward projecting parts" or flaps. The words of the claim, "attaching * * * to the inside portion of the open seam," when fairly construed in connection with the reference to the specification, are, in my opinion, limited to attachment to both sides of the inner seam. Furthermore, the claim calls for attachment of the sides of the stiffening material to the inside portion, and would not be infringed by a method of attaching through the central line, leaving the sides of the stay unconfined. I am of the opinion that the defendant's method cannot be brought within the language of the claim of the patent, and therefore that there is no infringement.

The complainant's counsel contend that by the word "sides" is meant the front and back sides, "or, in other words, that the stay is to be stitched flatwise to the inside portion of the open seam,— the only practical way it can be stitched." It is hardly conceivable, however, that the patentee could have thought that any one would endeavor to apply the stiffening material otherwise than flat; and it is so obvious that the word "sides" means portions of the stay at opposite sides of its central line after it is laid flat upon the main seam, that the complainant's expert testifies that "the word 'sides' refers to those portions of the stiffening material or stay which lie outside of a central line drawn from end to end of the stay." This is clearly the only possible interpretation, and there is no room for the application of the rule that, where a claim is fairly capable of two constructions, that one will be adopted which preserves to the patentee his actual invention. The defendant's method cannot be brought within the claim, save by rejecting the words "its sides," which the patentee has made a substantial part of the claim. But, even should we ignore these words, the complainant, in my opinion, still fails to show infringement of any invention disclosed by the patent.

In view of the fact that it is proven that whalebone in a cloth casing had been applied to the open seam by stitching the sides of the casing to opposite sides of the inner seam, I am of the opinion that there was no invention in stitching directly through the stay, instead of through the casing alone, after a stiffening material was made in which, as Warren testifies, "the bone and casing were one," and which could be perforated by a needle. But, assuming invention in what is disclosed in the patent, I am of the opinion that the complainant entirely fails in proving a substantial similarity between what is dis-

closed by the patent, and what is done by the defendant. The following is proposed by the complainant as the essential test of similarity:

"The essentials of the method being that the line or lines of stitching shall run very close to, and yet not encroach upon, the line of stitching making the main seam of the garment, and that the stitching shall be continuous from end to end of the stay."

There is absolutely nothing in the patent to show that the patentee had learned that it was essential to attach the stay as closely as possible to the main seam. On the contrary, he directs that the sides of his stay be attached. It is amply proved in this record that the method of attaching a stay by a single line of stitching through its center and through but one flap, and close to the main seam, is of so much greater practical value than the patented method of attaching it to both flaps by two lines of stitching, that the complainant has abandoned the method of the patent, and teaches through demonstrators only the method which is used by the defendant. That there is a very substantial and practical difference between what the patent describes and what is done in actual practice is established by the complainant's testimony. The complainant's argument merely assumes, and does not prove, the substantial similarity of the practical with the patented method. Miss Doty, witness for complainant, testifies that the continued confinement of the central portion of the bone, and the fact that both sides are free, does away with fulling or wrinkling; and that stitching the stiffening material to the waist by the machine is far superior, principally because the bone is fastened in the center. Mr. Chapman, the complainant's expert, testifies that an essential of the method of the patent is that the line or lines of stitching shall run very close to, and yet not encroach upon, the line of stitching making the main seam of the garment; but this is the method in use, and not that described in the patent. Evidence has been offered to show that the commercial importance of "Featherbone" is to some extent dependent upon the teaching of the method of the patent; but it shows rather the value of a method not disclosed or suggested by the patent. Warren testifies that he has no desire to attach the stay in the manner described in the patent; and it is evident that this is because of the superiority of the method of attachment by sewing with a sewing machine a single line of stitching through the central line of the stiffening material, and through one flap of the inner seam close to the main seam. The advantages of this method of attachment, with whomsoever it originated, are facility in attachment by the use of a sewing machine, superiority in operation from the fact that the sides are not confined, and that the patent directions are not followed in this respect. The defendant cannot, with his stiffening material, use either of the methods of attachment illustrated and described in the patent in suit. His material confines him to the central stitch. In order to sew through the sides, or to run seams at the sides of the central line, he would be obliged to sew through whalebone. Nor can it in strictness be said that the defendant has any line of stitching through his stiffening material. His stiffening material is whalebone. It is in evidence that one of the difficulties in stitching whalebone directly to the inner

seam was that the whalebone had to be soaked in water and softened before the needle could penetrate it. The complainant adopted a substitute for whalebone, which could be attached by sewing through it. The defendant obviates the difficulty in the use of whalebone in an entirely independent and novel manner. He divides his whalebone into two strips, which are confined in a case which separates them and leaves a central line of fabric, which can be penetrated by the needle. His novel stay cannot be suppressed as a competitor of "Featherbone" by preventing him from sewing through the central line and attaching it to one flap of the inner seam, through a patent which does not disclose or suggest this manner of attachment.

In view of the practical dissimilarity of this method and that disclosed by the patent, and of the entire absence of any evidence to show that the patentee himself originated the particular method actually in use, the complainant's case must be regarded as outside the patent, and as an attempt to include in and cover by a patent for one thing, several distinct and unrelated things.

The bill will be dismissed.